THE INHABITANTS OF THE TOWNSHIP OF READINGTON, IN THE COUNTY OF HUNTERDON, v. AARON DILLEY.

1. A *certiorari* brought by a township committee to review the proceedings and appointment of commissioners to review the damages assessed by surveyors of the highways in laying out a road, is properly entitled in the name of the township as plaintiffs in *certiorari ;* they only are interested, and the name of the state should not be used ; and if it were error, it may be amended.

2. A *certiorari* to bring up the proceedings for reviewing the assessment of damages made by surveyors in laying out a road does not involve the proceedings in laying out the road itself, that is a distinct matter; and these proceedings ought not to be returned with such *certiorari*.

3. A judge is not incompetent to appoint commissioners to review the damages on laying out a road because he has once been a member of the town committee, nor because he was once employed as surveyor by the opponents of the road, nor because he has expressed an opinion that the road was unnecessary: these are matters unconnected with the question of the damages sustained.

4. It is no objection, of itself, to the appointment of a person as a freeholder to review damages by laying out a road, that he had opposed the laying out of the road.

5. A person ought not to be appointed to review damages in laying out a road who has formed or expressed an opinion upon the subject with a knowledge of the facts, and the assessment made under such appointment will be set aside on *certiorari*: no person, however, who knew of such objection at the time of the appointment, and did not make it then, will be allowed to take advantage of it upon *certiorari*.

6. The expense of making fence and the inconvenience of being cut off from water are proper matters to be allowed for in the assessment of damages by the laying out of a road.

7. In assessing the damages by laying out a road, the surveyors or freeholders have no right to swear or examine witnesses: they should view the premises and hear the parties or their counsel; it is in their discretion what statements they will hear and what documents they will examine.

8. It is not error, upon several distinct applications for the appointment of freeholders to review the damages by laying out a road, to appoint the same freeholders in each case.

9. Where the appointment of freeholders and their proceedings are set aside, for reasons that are not the laches or fault of the party applying for them, such party may apply for the appointment of new freeholders in twenty days after the judgment setting aside the first appointment.

On *certiorari* to the Hunterdon pleas, in matter of highway.

Messrs. *Allen* and *W. L. Dayton* for plaintiff in *certiorari*; Mr. *Ransom* for defendant.

The cause was heard by ELMER and POTTS, justices.

POTTS, J. Surveyors of highways having altered a public highway in the townships of Readington and Tewksbury, in the county of Hunterdon, and assessed to Aaron Dilley, among others, the sum of $40, as damages by him sustained for lands, &c., taken for the same in the township of Readington, in January, 1852, under the provisions of the supplement to the

act concerning roads, *Pamph. L.* 1850, 162, the said Dilley, within the proper time and upon due notice to the township committee of Readington, applied to Joseph Thompson, esq., one of the judges of the Court of Common Pleas of Hunterdon, for the appointment of three competent and disinterested freeholders to review the assessment in his case; and thereupon the said judge appointed Austin Clark, William P. Allpaugh, and Asa Tiger to review the same; who, upon due notice to the said township committee, reassessed the said damages sustained by said Dilley at $270, to be paid by the township of Readington: and this *certiorari* brings up the proceedings upon the reassessment of which the township of Readington complains.

No objection is taken to the form of these proceedings; but the counsel for the defendant in *certiorari*, when the case came on for argument, moved to dismiss the writ, upon two grounds.

1. That the writ was improperly endorsed, insisting that it should have been entitled "*The state,* the inhabitants, &c., prosecutors, v. Aaron Dilley." There is nothing in this. In matters of public highway, the name of the state is used because the laying out of a road is a matter which concerns the public at large; but in a question of reassessment of damages nobody has any interest but the inhabitants of the township who are to pay, and the land owner who is to receive the amount of the assessment. The writ in this case is properly endorsed; and even if it were not so, it would be amendable in that particular. *State* v. *Kirby,* 2 *South.* 837; *State* v. *Hanford,* 6 *Halst.* 74; *Upper Freehold* v. *Hillsborough,* 1 *Green* 293.

2. The defendant's counsel contend that this writ is not broad enough; that it brings up for review only the proceedings touching the reassessment, whereas he insists that this question necessarily involves the whole proceedings concerning the alteration of the road, as well as the question of damages. But this is not so. If the surveyors who lay out or alter a public highway fail to assess damages to the land owners according to the provisions of the act, *that* omission vitiates the entire proceeding, and is ground for setting the return itself

aside; because the whole is one entire thing, and a legal assessment of damages is of the essence of the right of the public to the road. *State* v. *Everitt*, 3 *Zab.* 378. But where the damages have been legally assessed by the surveyors, the right of the public is acquired; the road is authorized, and may be opened and used. The subsequent proceedings in reference to a reassessment is a mere question between the land owner and the township as to the amount of damages to be paid. If either party succeeds in changing the amount of the original assessment that party gets the benefit of it. If the effort is unsuccessful, the original assessment stands.

The motion to dismiss, therefore, cannot prevail.

It remains, then, to examine whether the plaintiffs in *certiorari* have shown any sufficient ground for setting aside the reassessment complained of.

1. The first reason relied upon is, that the judge who made the appointment of freeholders to review and reassess the damages was disqualified from acting in the premises.

It appears, from the testimony, that the proper location of the road in question had, for many years, been a matter of controversy; and Judge Thompson, being a citizen of Readington, and a practical surveyor, had been called on to survey the road in 1839; had opposed the alteration, in 1847, before the surveyors then appointed, and received a small compensation for doing so from some of the opponents; and, in 1848, had surveyed the road for Dilley and others. But it does not appear that he took any part for or against the applicants for the alteration of the road since then, beyond lending his aid towards having the matters in difference compromised, and signing a remonstrance as a member of the township committee against it, on the ground, simply, that the benefit to the public would not equal the expense. He was not a member of the township committee when he made the appointment. That committee was duly notified of the intended application to Judge Thompson for the appointment of freeholders; and Mr. Stryker, one of the committee, attended before him, and took part in the proceeding, but made no objection to the qualification of the judge. No doubt the judge to whom ap-

plication is to be made in such cases should be disinterested and impartial. If he is not so, it is ground of challenge. But I do not see in this case any evidence that the judge had any partiality, bias, or interest as to this question of reassessment of damages. If he had any interest, it was as a taxpayer of the township of Readington, and that was an interest in having the damages assessed lower, instead of higher. Besides, it is proved that of the freeholders appointed by him, the only two who are objected to were persons not originally named by him, but appointed upon the nomination of one or both the parties, and, as far as appears, with their full concurrence. There is nothing to show that he acted unfairly or partially, and this reason is not sustained.

2. The second reason is, that Asa Tiger and William P. Allpaugh, two of the freeholders appointed to reassess these damages, had signed a remonstrance against the alteration, and were opposed to it. But this is not a circumstance, standing by itself, from which any bias can be legitimately inferred as to the question of the amount of damages sustained by Dilley, and the proceedings cannot be set aside for this.

3. The third reason is, that Tiger had, before his appointment, formed and publicly expressed an opinion as to the amount of damages Mr. Dilley had sustained by the alteration of the road. This reason is substantially sustained by the evidence. Is it sufficient to set aside the reassessment? · Mr. Tiger, it appears, was acquainted with the location of the road over Dilley's land before his appointment, and had expressed the opinion at different times that it would injure him to the extent of $500, $700, and $1000. It is the case of an opinion formed not from reports merely, but from actual knowledge of the premises. With this preconceived opinion, was he a fit person to sit in judgment between these parties upon this very question of the amount of damages sustained? The case is analogous in principle to that of a juror; and Lord Coke says, "the rule of law is that the juror must stand indifferent as he stands unsworn." *Coke Litt.* 155 *b.* An opinion formed and expressed by a juror on the subject matter in controversy is good cause of challenge. *Blake* v. *Millspaugh,* 1 *Johns. R.*

316; *Ex parte Vermilyea*, 6 *Cowen* 563; 7 *Cowen* 121; Per C. J. *Marshall*, 1 *Burr's Trial* 370, 419; *People* v. *Mather*, 4 *Wendell* 238; 2 *Bac. Ab., Title "Juries"* E. 5, p. 756; 1 *Arch. Pr.* 179. True, it has been held that if the opinion was founded on mere *reports*, and the juror swears he has no bias against or partiality for either party, it is not cause. *Durrell* v. *Mosher*, 8 *Johns. R.* 445; *Pringle* v. *Hulse*, 1 *Cowen* 436 (*note* 1); *Mann* v. *Glover*, 2 *Green's R.* 200. But here, as we have seen, Tiger's opinion was not founded on reports or hearsay, but upon his personal knowledge of the land and the location of the road as altered. If this objection had been taken, and the fact proved by either party at the meeting for the appointment of the freeholders, and the judge had notwithstanding made the appointment, it would, doubtless, have been good cause for setting the reassessment aside. But the objection was not taken. Mr. Tiger was appointed, as one or two witnesses say, with the consent of Stryker, the representative of Readington, and Dilley. Mr. Stryker, however, testifies that he was not aware, at the time, that Tiger had expressed any opinion about the damages; if he had known it, he says, he would have objected to him. And as soon as the fact came to the knowledge of the township committee, they did make the objection, but it was then too late. Having made the appointment, the judge had no power to revoke it. It has always been held as a ground for a new trial if a juror prejudge the case, and it is unknown to the failing party in time to challenge. *Graham on New Trials* 129; *Dent* v. *The Hundred of Hertford*, 2 *Salk.* 645. This is the case here, and for this cause the reassessment must be set aside.

This disposes of the case; but it may be useful to examine and settle, as far as we can, the other questions presented.

4. The fourth reason assigned is, in substance, that the freeholders adopted an erroneous principle in reassessing these damages. It is proved, by one of the freeholders, that "the way they made it (the amount of damage) up was, they valued the land at so much per acre, so much a panel for making fence, and so much damage for being cut off from water." The statute, *Pamph. L.* 162, § 1, directs the assessment of

"the damages the owner of any land or real estate which may be taken for that purpose will sustain by the laying out or altering said public road," &c. The necessity of making fences, and the inconvenience of being cut off from water by the laying of the road, may certainly be as really a *damage* sustained by the owner of the land taken for a public highway as by the appropriation of the°land itself. The statute does not say that the mere value of the land shall be the measure of damages, and therefore this court cannot say so. There was no error, therefore, in the principle adopted by the freeholders; and that being right, we cannot, upon *certiorari*, inquire whether the damages given were excessive. *N. J. Railroad* v. *Suydam*, 2 *Har.* 33; *State* v. *Miller*, 3 *Zab.* 383.

5. The fifth reason is, that the freeholders refused to hear testimony offered by the plaintiffs in *certiorari* as to the amount of damages sustained by Dilley. The statute gives no directions as to the mode in which the surveyors originally, or the freeholders upon a review, shall proceed to ascertain the damages, whether by view simply, or by hearing the parties by witnesses, or both. Its language is, " the surveyors, or a majority of them, shall, immediately after laying out or altering any public road, &c., make an assessment of the damages the owner of any land, &c., will sustain," &c.; and when a reassessment is applied for, it directs that the freeholders appointed on such application shall " review the assessment made by the surveyors, and lessen or increase the same as to them, in their judgment under the circumstances of the case, shall seem fit and just." It was held in *Van Winkle* v. *The C. & A. Railroad Co.*, 2 *Green's R.* 167, that, under the provisions of the charter of that company directing the commissioners appointed to assess the value of the land taken for the purposes of the company and the damages "should proceed to view and examine the said land, &c., and make an appraisement," &c., they had no authority to swear and examine witnesses; that such a proceeding was *coram non judice;* that the commissioners are to judge from inspection, from their own view and examination of the premises. But in *Cooter* v. *The N. J. Railroad Co.*, 3 *Zab.* 227, the court held that commissioners ap-

pointed to assess the damages for land taken in that case did not commit any error by examining deeds and records of other assessments of land adjacent to and near the premises, and hearing statements from one person of certain facts, while considering the question of the amount of damages, and with the view of aiding them in forming a judgment; and this decision was affirmed in the Court of Errors. But the question, whether the surveyors or freeholders, acting under the supplement to the road act, have a right to examine witnesses in reference to the damages proper to be assessed, has never been decided. There is this difference between the provisions of this supplement and those of the charters referred to ; the first makes no provision for an ultimate appeal to a jury, while the charters do make provision for such an appeal. The decision of the freeholders in the one case is final upon the merits, that of the commissioners in the other cases is not final. There would seem, therefore, to be more propriety in giving the freeholders the power to hear testimony than there is in the other cases. But still it is a question whether, under the statute, there is any such power. The general rule is, that persons acting under a special delegated authority must act strictly within the scope of that authority, and cannot exceed it. The case has some analogy to a reference or arbitration ; but there the legislature have expressly authorized and made provision for the examination of witnesses.

I think we cannot say that, under this statute, there is any authority conferred on the surveyors or freeholders to examine witnesses under oath as to the question of the damages they are to assess. They have none of the powers incident and essential to such an authority; they cannot issue process for, or compel the attendance of witnesses ; they cannot administer an oath to them ; they are not a tribunal to determine who are and who are not competent to give evidence, or what is proper and legal evidence ; nor have they authority to invoke the aid of a judicial officer to discharge these duties for them. But it does not follow that they may not hear the parties in interest by themselves or by counsel, nor that they may not avail themselves of any accessible means of informa-

tion calculated to aid them in making up their determination. I do not think they are bound to shut their eyes or their ears, and go blind and deaf into the discharge of their duties. They have a right not only to view the premises, but to inquire and possess themselves of all necessary information in reference to the subject matter they are sworn to examine and decide. They should view the premises and hear the parties, but beyond this it must be left to their discretion what information they shall seek, what statements they will hear, what documents they will examine. The freeholders, therefore, committed no error in this particular.

The last reason for setting aside the reassessment is, that illegal costs were allowed.

The point of the objection is, that three distinct applications were made for reassessments, of which Dilley's was one; that the same freeholders were appointed in each case; that they examined and decided all the cases within the same time, and that three separate bills of costs have been allowed, one in each case. In this there is no error.

Let the reassessment be set aside for the third reason assigned, *to wit*, that Tiger had formed and expressed an opinion, as to the amount of damages sustained by Dilley, previous to his appointment.

It was held, in the case of *The State* v. *Miller*, 3 *Zab.* 383, that if a town committee have applied within twenty days for the appointment of freeholders to review the assessment of surveyors, and the appointment, without their default, is not made within that time, the remedy is not lost, but the appointment may be subsequently made. Here the freeholders made a reassessment, but it turns out to be illegal in consequence of the disqualification of one of the freeholders. The township committee are in no default, and the principle settled in *The State* v. *Miller* fairly applies. The matter has been in litigation, and either party have still a right within twenty days to apply for the appointment of freeholders, and have the original assessment by the surveyors reviewed.

ELMER, J., concurred.